**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NAQWIAL G.-B.,**
**on behalf of N.M.R., a minor,**

    **Plaintiff,**        **Case No. 2:24-cv-10369**
                 **Magistrate Judge Cheryl L. Pollak**

  v.

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Naqwial G.-B. (hereinafter

"Plaintiff") on behalf of N.M.R., her minor daughter (hereinafter "Claimant"), for Supplemental

Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff

appeals from the final decision of the Commissioner of Social Security denying Plaintiff's

application.[1] After careful consideration of the entire record, including the entire administrative

record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil

Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the

Commissioner's decision and remands the action for further proceedings.

## I. PROCEDURAL HISTORY

The application for benefits, filed on February 8, 2022, alleges that Claimant has been

disabled since May 1, 2020. R. 57, 64, 170–90. The application was denied initially on July 7,

---

[1] Frank Bisignano, the Commissioner of Social Security, is substituted as Defendant in his official capacity.

2022, and upon reconsideration on September 2, 2022. R. 81–85, 87–89. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 90. ALJ Kenneth Ayers held a hearing on October 25, 2023, at which Plaintiff, the Claimant's mother, who was represented by counsel, testified. R. 35–56.

In a decision dated January 31, 2024, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act from February 8, 2022, the date the application was filed, through the date of that decision. R. 18–30. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 9, 2024. R. 1–7.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 25, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[2] On April 20, 2026, the case was reassigned to the undersigned. ECF No. 14. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

3

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at \*3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at \*4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at \*4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

4

paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court

"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As

the Third Circuit explained:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp. 3d at 518. In assessing whether the record is fully developed to

support an award of benefits, courts take a more liberal approach when the claimant has already

faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An

award is "especially appropriate when "further administrative proceedings would simply prolong

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223;

*see Schonewolf*, 972 F. Supp. at 290.

#### B.       Sequential Evaluation Process

Under the Social Security Act, a child who suffers from an impairment of "comparable

severity" to one that would qualify an adult as disabled, is authorized to receive Supplemental

Security Income (SSI) benefits. *See Sullivan v. Zebley*, 493 U.S. 521, 529 (1990).  In determining

whether an adult claimant is disabled, the regulations set forth a five-step test. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). "The first two steps involve threshold determinations that the

[adult] claimant is not presently working and has an impairment which is of the required duration

and which significantly limits his [or her] ability to work." *Sullivan*, 493 U.S. at 525 (citing 20

CFR §§ 416.920(a)–(c) (1989)). At step three, the ALJ compares the medical evidence of the

adult claimant's impairment to a list of impairments presumed to be severe enough to preclude

the claimant from engaging in any gainful work. *Id*. (citing 20 CFR pt. 404, subpt. P, App. 1 (pt.

A) (1989)). If the adult claimant's impairment fails to match or is not "equal" to any of the

listings, the analysis then considers if the claimant can do his or her past work or any other work

that exists in significant numbers in the national economy. *Id*. at 525–26. If the adult claimant

cannot perform his or her past work or other work, then the claimant qualifies for benefits. *Id*. at

526 (citing §§ 416.920(e) and (f)).

A claimant under 18 years of age is considered "disabled" under the Social Security Act

if he or she has a medically determinable physical or mental impairment (or combination of

impairments) that results in "marked and severe functional limitations . . . which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§1382c(a)(3)(C). The test for determining if a child is disabled asks if the child "'is not doing

any substantial gainful activity,' 20 CFR 416.924(a), if his [or her] impairment meets the duration requirement, § 416.924(b)(1), and if it matches or is medically equal to a listed impairment, §§ 416.924(b)(2) and (3)." *Sullivan*, 493 U.S. at 525. Under this "abbreviated version of the adult test[,]" there is "no further inquiry corresponding to the fourth and fifth steps of the adult test," and no opportunity for children to challenge the presumption of disability, even those whose impairments are of 'comparable severity' to those that would render an adult disabled. *Id.* at 526, 535–37.

In *Sullivan*, the Supreme Court found that the "Secretary's regulations and rulings implementing the child-disability statute simply do not carry out the statutory requirement that SSI benefits shall be provided to children with 'any . . . impairment of comparable severity' to an impairment that would make an adult 'unable to engage in any substantial gainful activity.'" *Id.* at 541 (citing 42 U.S.C. § 1382c(a)(3)(A)). In reaching this holding, the Court explained that the Social Security Act "defines 'disability' in terms of an individualized, functional inquiry into the effect of medical problems on a person's ability to work." *Id.* at 528 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987), and *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)). Observing that the listing of impairments did not cover all illnesses and abnormalities that actually can be disabling and that there were children whose impairments are not quite severe enough to rise to the presumptively disabling level set by the listings, the Court rejected the Secretary's arguments that "an individualized, functional approach to child-disability claims like that provided for adults is not feasible." *Id.* at 539–40. The Court held that an inquiry into the impact of an "impairment on the normal daily activities of a child of the claimant's age -- speaking, walking, washing, dressing, and feeding oneself, going to school, playing, etc. -- is, in our view, no more amorphous or unmanageable than an inquiry into the impact of an adult's

impairment on his ability to perform 'any other kind of substantial gainful work which exists in the national economy[.]'" *Id*. at 540 (quoting 42 U.S.C. § 1382c(a)(3)(B)).

Accordingly, to summarize, at step one of the three-step sequential evaluation for determining whether a child is disabled, the ALJ determines whether the minor claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b).  If so, then the inquiry ends because the minor claimant is not disabled.

At step two, the ALJ decides whether the minor claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the minor claimant does not have a medically determinable impairment, or if the minor claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the minor claimant is not disabled. *Id*. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the minor claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the minor claimant has an impairment that meets or medically or functionally equals the requirements of a Listing, and that also meets the duration requirement, the claimant is disabled. 20 C.F.R. § 416.924(d)(1).

The regulations provide rules for evaluating whether the minor claimant meets a listing, medically equals a listing, or functionally equals a listing. The minor claimant meets a listing if a medically determinable impairment(s) satisfies all of the criteria of a listing. 20 C.F.R. § 416.925(d).

An impairment or combination of impairments medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). When determining whether an impairment medically equals a listing, the ALJ considers all the evidence in a minor claimant's record about that claimant's impairment and its effects on the minor claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the [minor claimant's] impairment or combination of impairments [] does not meet or medically equal any listing, [the ALJ] will decide whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). A court determines whether a minor claimant's impairment "functionally equals" a Listing by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

To functionally equal a Listing, the minor claimant's impairment must result in "marked" limitations in two domains of functioning or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain occurs when the minor claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).  "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id*. A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*.

An "extreme" limitation in a domain occurs when the minor claimant's impairment interferes very seriously with that claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). "Extreme" limitation also means a limitation

that is "more than marked" and is the rating given to the worst limitations. *Id*. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. *Id*. It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. *Id*.

When determining whether a minor claimant's impairment is functionally equivalent to a Listing, the ALJ uses a "whole-child" approach. SSR 09-1p, 2009 WL 396031, at *2 (Feb. 17, 2009). Under this approach, the ALJ starts the evaluation "by considering the child's functioning without considering the domains or individual impairments." *Id*. at *1. After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id*. at *2. An impairment "may have effects in more than one domain" and the ALJ must evaluate limitations caused by an impairment "in any affected domain(s)." *Id*. (quoting 20 C.F.R. § 416.926a(c)).

Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id*. "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id*.

## III.   ALJ DECISION AND APPELLATE ISSUES

Claimant was 9 years old on February 8, 2022, the date the application was filed. R. 19. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since February 8, 2022, her application date. *Id*.

At step two, the ALJ found that Claimant suffered from the following severe impairments: ADHD; Oppositional Defiant Disorder or disruptive mood dysregulation disorder;

depressive disorder; and autism spectrum disorder. *Id*. The ALJ also found that the following impairments were not severe: heart murmur; gastroesophageal reflux disease ("GERD"); and obesity. *Id*.

At step three, the ALJ found that Claimant did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21–22. The ALJ also found that Claimant does not have an impairment or combination of impairments that functionally equaled the severity of the Listings. R. 22–29. Specifically, the ALJ found that Claimant had a marked limitation in interacting and relating to others. R. 23, 26–28. The ALJ also found that Claimant had less than marked limitations in acquiring and using information; attending and completing tasks; and caring for herself. R. 23–26, 28. The ALJ further found that Claimant had no limitations in moving about and manipulating objects, and in health and physical well-being. R. 23, 28–29.

Based on the foregoing analysis, the ALJ concluded that Claimant has not been disabled within the meaning of the Social Security Act since February 8, 2020, the date the application was filed. R. 30.

Plaintiff disagrees with the ALJ's findings at step three and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Claimant's Social Security Brief* ("*Cl.'s Br.*"), ECF No. 8; *Claimant's Social Security Brief* ("*Cl.'s Reply*"), ECF No. 11. Plaintiff raises different challenges to the ALJ's findings at step three of the sequential evaluation relating to Claimant's claim for child benefits, including the ALJ's conclusion that the Claimant did not meet or medically equal a listed impairment. *Cl.'s Br.* at 4–19. Plaintiff specifically argues, *inter alia*, that the ALJ did not properly consider the paragraph B criteria

of Listing 112.08,[3] especially the functional areas of interacting with others and adapting or managing oneself. *Id*. In advancing this argument that Claimant has an extreme limitation in interacting with others and a marked or extreme limitation in adapting or managing herself, Plaintiff cites to record evidence, including a neuropsychological report, which Plaintiff complains the ALJ improperly discounted. *Id*.

The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief* ("*D.'s Br.*"), ECF No. 10.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On February 21, 2023, Jesse Glassman, Psy.D., ABSNP and Kim Mooney, Ph.D., L.D.T.C. conducted a neuropsychological evaluation of Claimant. R. 661–97. In a report dated February 26, 2023, Drs. Glassman and Mooney documented their findings ("neuropsychological report"). *Id*. The neuropsychological evaluation, conducted when Claimant was 10 years old, was comprised of several tests, including the Behavior Assessment Scale for Children – Third Edition, Parent Ratings Scale – Child ("BASC-3"); Childhood Autism Rating Scale, Second Edition – Questionnaire for Parents or Caregivers ("CARS 2 – QPC"); Learning Evaluation (Woodcock Johnson IV Test of Achievement ("WJIV-ACH")) – Form A; and Wechsler Intelligence Scale for Children – Fifth Edition ("WISC-V"). R. 661.

Plaintiff, Claimant's mother, completed the BASC-3 to "investigate" Claimant's "emotional and behavioral functioning through [Plaintiff's] reports of the presence and degree

---

[3] Plaintiff also argues that the ALJ erred in finding that Claimant did not functionally equal a listed impairment. The Court briefly addresses below the ALJ's functional equivalence discussion.

12

of relevant behaviors and personality characteristics." R. 670. The BASC-3 includes a scale "designed to assess the possibility that a rater has depicted a child's behavior in an inordinately negative fashion[,]" which is known as the "F Index." *Id*. (explaining that the F Index is referred to as a "fake-bad" scale as "it might be perceived as an attempt to present a negatively distorted view of the child's behavior"). Plaintiff's ratings of Claimant produced an F Index score within the "Extreme Caution" range, meaning that "[e]xtreme caution should be used when interpreting BASC-3 scale scores; careful corroboration of these ratings based on additional sources of information is recommended." *Id*. The following topics/responses contributed to the F Index score of "Extreme Caution": Plaintiff's claim that Claimant threatens to hurt others ("Almost always"); deceives others ("Almost always"); hurts others on purpose ("Almost always"); reacts negatively ("Almost always"); puts others down ("Almost always"); bullies others ("Almost always"); does strange things ("Almost always"); and acts out of control ("Almost always"). R. 671.

The BASC-3 also has a "Consistency Index[,]" which "identifies situations when the rater has given inconsistent responses to items that are typically answered in a similar way, based on comparisons made to raters from the general population." R. 671. The Consistency Index score produced by Plaintiff is within the Acceptable range and reflects that Plaintiff "consistently answered items when completing the rating form." *Id*.

The psychologists' findings included, *inter alia*, scale scores from the BASC-3 that were in the "Clinically Significant" range, which "suggest a high level of maladjustment." R. 672. Specifically, Claimant had "Clinically Significant" scores in the following areas, among others:

- externalizing problems

13

- aggression

- conduct problems

- anger control

- emotional self-control

- executive functioning

- negative emotionality, and

- inappropriate behavior/feelings.

R. 672–76 (reflecting further other scale scores in the "At Risk" range, which "may identify a significant problem that may not be severe enough to require formal treatment or may identify the potential of developing a problem that needs careful monitoring").

The psychologists' diagnostic determinations on the DSM-V were autism spectrum disorder; attention-deficit/hyperactivity disorder-combined type; disruptive mood dysregulation disorder; and depressive disorder. R. 696. The psychologists' recommendations included following up with Plaintiff "to address this noted caution with results" and included individual and family therapy. R. 695. According to the psychologists, such therapy would be designed to work on managing Claimant's presenting symptoms of her disorders, including "behavior support strategies" to help Claimant and her family in "managing her presenting needs and awareness [of her] negative behavior" as well as help with understanding Claimant's emotional strengths and weaknesses. *Id*. The psychologists further recommended training and support to improve Claimant's behavior and social skills. *Id*.

## V.    DISCUSSION

At step three of the sequential evaluation involving a minor claimant, an ALJ considers, *inter alia*, whether the claimant's impairment(s) or the combination of the claimant's medically

determinable impairments meets or medically equals the severity of one of the listed impairments. 20 C.F.R. § 416.924(a). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original).

Moreover, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)).

Although the ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

Listing 112.08 addresses personality and impulse-control disorders for children age 3 to attainment of age 18. 20 C.F.R. pt. 404, subpt. P, app.1, § 112.08.[4] A claimant meets the level of severity when the requirements in both paragraphs A and B of Listing 112.08 are satisfied:

A. Medical documentation of a pervasive pattern of one or more of the following:

1. Distrust and suspiciousness of others;
2. Detachment from social relationships;
3. Disregard for and violation of the rights of others;
4. Instability of interpersonal relationships;
5. Excessive emotionality and attention seeking;
6. Feelings of inadequacy;
7. Excessive need to be taken care of;
8. Preoccupation with perfectionism and orderliness; or
9. Recurrent, impulsive, aggressive behavioral outbursts.

AND

B. *Extreme limitation of one, or marked limitation of two*, of the following areas of mental functioning (see 112.00F):

1. Understand, remember, or apply information[].
2. Interact with others (see 112.00E2).
3. Concentrate, persist, or maintain pace[].
4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. § pt. 404, subpt. P, app.1, § 112.08 (emphasis added); *see also* R. 21 (explaining that a "marked" limitation "is a seriously limited ability to function independently, appropriately, or effectively and on a sustained basis" while an "extreme" limitation "is the inability to function independently, appropriately, or effectively and on a sustained basis").

---

[4] "An ALJ is to use the Listings in effect at the time of his or her decision." *Widhson v. Kijakazi*, No. CV 20-3343, 2021 WL 2947674, at *7 n.32 (E.D. Pa. July 13, 2021) (citations omitted); *see also Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 380 n.2 (3d Cir. 2004) ("For purposes of our analysis we review the ALJ's decision based upon the law that was in effect at the time of the ALJ's decision."). The Court has used Listing 112.08 that was in effect at the time of the ALJ's decision, *i.e.*, January 31, 2024.

16

The ALJ uses paragraph B to rate the degree of a claimant's limitations, considering only the limits that result from the claimant's mental disorders. *Id*. at § 112.00F1. The ALJ determines whether a claimant is "able to use each of the paragraph B areas of mental functioning in age-appropriate[5] activities in a manner comparable to that of other children [the claimant's] age who do not have impairments." *Id*. The ALJ will consider, "for example, the range of [the claimant's] activities and whether they are age-appropriate; how well [the claimant] can initiate, sustain, and complete [his or her] activities; the kinds and frequency of help or supervision [the claimant] receive[s]; and the kinds of structured or supportive settings [the claimant] need[s] in order to function age-appropriately[.]" *Id*.

In the present case, as previously discussed, at step two of the sequential evaluation, the ALJ found that Claimant had severe impairments of ADHD; Oppositional Defiant Disorder or disruptive mood dysregulation disorder; depressive disorder; and autism spectrum disorder. R. 19.

At step three, the ALJ concluded, *inter alia*, that Claimant does not have an impairment or combination of impairments that meets or medically equals a listing, including Listing 112.08, because Claimant is not extremely limited in one functional area or markedly limited in two functional areas. R. 21–22.

Plaintiff specifically challenges the ALJ erred in finding Claimant is only moderately limited in the ability to adapt and manage herself. *Cl.'s Br.* at 4–7, 10–11, 16–19. According to Plaintiff, Claimant is markedly or extremely limited in that functional area. *Id*. Plaintiff also

---

[5] Claimant, who was born on January 25, 2013, was a school-age child on February 8, 2022, the date the application was filed, and remained a school-age child through the date of the ALJ's decision on January 31, 2024. R. 19; *see also* 20 C.F.R. § 416.926a(g)(2)(iv) (identifying school-age children as age 6 to attainment of age 12).

contends that the ALJ's paragraph B finding that Claimant is markedly limited in her ability to interact with others was error, arguing that Claimant is extremely limited in this functional area. *Id*. The Court addresses Plaintiff's challenges in turn.

### A.      Adapt or Manage Oneself

The functional area of adapt or manage oneself under paragraph B "refers to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings." 20 C.F.R. § pt. 404, subpt. P, app.1, § 112.00E4. Examples of these abilities include the following: responding to demands; adapting to changes; managing psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related activities; setting goals; making plans independently of others; maintaining personal hygiene; and protecting himself or herself from harm and exploitation by others. *Id*. Again, documentation of all of these examples is not required. *Id*.

In the present case, the ALJ found that Claimant was moderately limited in this functional area:

> In the area of adapting or managing oneself / regulating physiological functions, attention, emotion, and behavior, the claimant has moderate limitation.

> As discussed in further detail, in the body of this decision, the record established that the claimant appears to have difficulty regulating her emotions while navigating social situations. Therefore, the undersigned concludes the claimant has a moderate limitation in this domain [sic].

R. 22.[6]

---

[6] The ALJ errs in referring to adapting and managing oneself, which is a functional area under paragraph B of Listing 112.08, relating to medical equivalency, as a "domain," which is a term related to functional equivalency.

18

Plaintiff argues that the ALJ erred in finding that Claimant was only moderately limited in the ability to adapt and manage herself. *Cl.'s Br.* at 17–19. Plaintiff contends that the record supports a marked or extreme limitation in this area. *Id.* at 4–6, 10–11, 17–19 (citations omitted).

For his part, the Commissioner argues that the ALJ properly considered the record evidence at step three. *D.'s Br.* at 13–15 (citations omitted). The Commissioner specifically contends that the ALJ's consideration of the evidence provided substantial support to the ALJ's finding that the Claimant did not meet, medically equal, or functionally equal any listed impairment. *Id.* at 14–15 (citations omitted).

The Court agrees that the ALJ's errors in his consideration of the neuropsychological report at step three require remand. Plaintiff pointed to evidence that Claimant struggles with, among other things, responding to demands and managing her psychologically based symptoms. *Cl.'s Br.* at 17–18 (citations omitted). Plaintiff specifically highlights that Claimant does not like "no" and talks back and throws things when she does not get her way. *Id.* at 18 (citing R. 315, 380). Plaintiff points out that Claimant cannot control her temper, loses her temper easily, and has frequent and intense temper outbursts. *Id.* (citing R. 380, 570, 585). According to Plaintiff, this evidence demonstrates that Claimant's loss of emotional control is not limited to simply navigating social situations, as found by the ALJ, and that such evidence supports a marked or severe limitation in Claimant's ability to adapt and manage herself. *Id.* at 17–19, 22.

Plaintiff also complains that the ALJ's finding that Claimant was only moderately limited in adapting and managing herself was flawed because the ALJ improperly "skipped past" the neuropsychological report in his step three analysis. *Id.* at 17. As background, the ALJ stated that he "has considered this evaluation [the neuropsychological report] but notes that it also does not specifically address functioning." R. 29. The ALJ did not refer to that report when assessing the

19

paragraph B criteria, including when finding only a moderate limitation in the area of adapting and managing oneself. R. 22.

Plaintiff argues that, contrary to the ALJ's assertion, the neuropsychological report addresses functioning. *Cl.'s Br.* at 11. Plaintiff highlights that this report revealed clinically significant findings in a number of areas relevant to Claimant's ability to adapt and manage herself, including, *inter alia*, aggression; conduct problems; anger control; emotional self-control; executive functioning; negative emotionality; and inappropriate behavior/feelings. *Id.* at 4–7 (citing R. 672–76), 11, 17. Plaintiff also contends that the ALJ did not provide any analysis of the persuasiveness of this opinion as required under 20 C.F.R. § 416.920c.[7] *Id.* at 9–13. Plaintiff argues that the neuropsychological report supports a finding of disability and the ALJ's failure to consider that report at step three therefore requires remand. *Id.* at 10–11, 17, 28.

The Commissioner responds that the ALJ pointed out that the report did not address whether Claimant "met, equalled [sic] or functionally equalled [sic] a listed impairment or specifically address [Claimant's] functioning with the relevant domains[.]" *D.'s Br.* at 10. The Commissioner also contends that the ALJ's decision should be read "as a whole" and that "[t]he ALJ did not ignore any probative evidence[.]" *Id.* at 14.

---

[7] This regulation requires the Commissioner to consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c). This regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a).

20

The Court finds that the ALJ erred in implicitly discounting the neuropsychological report because that evidence purportedly "does not specifically address functioning." R. 29. Notably, "the BASC-3 . . . provides information on social/emotional functioning and behavior in the classroom." *Carisma A. o/b/o T.A. v. Comm'r of Soc. Sec.*, 516 F. Supp. 3d 301, 307 (W.D.N.Y. 2021). In *Carisma A.*, the Court found that the ALJ failed to adequately consider the psychological evaluation of a school psychologist. *Id*. at 304. The psychological evaluation included a BASC-3, completed by the minor claimant's teacher. *Id*. at 305. The teacher's scores for the minor claimant "produced a 'consistency index score' which fell within the 'caution' range, indicating that 'caution is warranted when interpreting the BASC-3 scale scores." *Id*. (citations omitted). The minor claimant was rated in the "clinically significant" range, "suggesting a 'high-level of maladjustment[,]'" on the externalizing scale. *Id*. (citations omitted). The minor claimant also scored in the "at-risk" range, "suggesting 'a significant problem that may not be severe enough to require formal treatment or may identify the potential of developing a problem that needs careful monitoring[,]'" in other areas. *Id*.

The Court in *Carisma A.* noted that the ALJ discussed that the school psychologist indicated in her evaluation that the minor claimant was cooperative, put forth good effort, was attentive throughout the evaluation, and even persevered when challenged. *Id*. at 306. The ALJ also noted that the school psychologist reported that the claimant was able to correct himself when he made mistakes, understood and remembered directions, did not have difficulties understanding or completing schoolwork, and had average WISC-V I.Q. scores. *Id*.

However, that Court found unclear whether the ALJ considered portions of that psychological evaluation relating to the minor claimant's behavioral issues. *Id*. Specifically, the Court noted that the minor claimant's "behavior was assessed pursuant to the BASC-3, which

provides information on social/emotional functioning and behavior in the classroom." *Id*. at 307. The Court highlighted that the minor claimant "scored in either the 'clinically significant' or 'high-risk' levels for most of the categories evaluated." *Id*. (citations omitted). The ALJ noted that the school psychologist found these scores to be significant and recommended intervention. *Id*. The Court therefore found that the ALJ "did not adequately address these portions" of the psychological evaluation. *Id*. The Court observed that the ALJ's discussion focused instead on "those portions of the evaluation which reflected positively on" the minor claimant's functioning. *Id*. (stating further that the school psychologist was not an acceptable medical source, but that "the ALJ may not mischaracterize her evaluation of [the minor claimant's] functioning").

The Court in *Carisma A.* further found that the minor claimant's behavioral difficulties were relevant to two functional domains. *Id*. (specifying the domains of attending and completing tasks and interacting with others and describing those domains). The Court noted that the ALJ in that case found that the minor claimant had a less than marked ability in those two domains, but that the ALJ "did not acknowledge or consider the behavior issues identified by" the school psychologist that "suggest that [the minor claimant] would be severely limited in those domains . . . when making those [less than marked] findings." *Id*. The Court reasoned that the school psychologist's findings relating to the minor claimant's behavioral issues were significant and, where the ALJ determined that the claimant had less than marked limitations in the two domains, the ALJ should have explained why he found the school psychologist's behavior assessment unpersuasive. *Id*. The Court therefore remanded the action with the direction that the ALJ "address the entirety of [the school psychologist's] psychological evaluation, including the portions of the evaluation addressing [the minor claimant's]

22

social/emotional functioning and behavior in the classroom, and whether her conclusions were supported or contradicted by the record." *Id.* at 305–06.

Similarly, in the present case, the neuropsychological report, which this Court has already detailed above, includes findings relevant to, *inter alia*, Claimant's ability to adapt and manage herself, one of the broad functional areas under paragraph B of Listing 112.08. R. 661–97. The BASC-3 portion of the neuropsychological report yielded several scale scores that were clinically significant, *i.e.*, scores which suggest a high level of maladjustment. R. 672–76. Specifically, the BASC-3 produced clinically significant scores in the areas of, *inter alia*, externalizing problems; aggression; conduct problems; anger control; emotional self-control; executive functioning; negative emotionality; and inappropriate behavior/feelings. *Id.*

In other words, the neuropsychological report contains evidence that impacts Claimant's ability to respond to demands; adapt to changes; manage psychologically based symptoms; and distinguish between acceptable and unacceptable performance in community or school, *i.e.*, how to adapt or manage herself. R. 672, 674–76; 20 C.F.R. § pt. 404, subpt. P, app.1, § 112.00E4. Accordingly, contrary to the ALJ's finding that the neuropsychological report (which contains the BASC-3) does not address functioning, the BASC-3 in this case, as in *Carisma A.*, "provides information on social/emotional functioning and behavior in the classroom." *Carisma A.*, 516 F. Supp. 3d at 307.

Notably, the ALJ may not simply reject evidence for the wrong reason or for no reason. *See Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("[T]he ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'") (quoting *Morales*, 225 F.3d at 317); *cf. Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of

23

the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Thus, substantial evidence does not support the ALJ's finding when he or she rejects evidence for the wrong reason. *See id*.

The fact that portions of the BASC-3 received cautionary ratings does not undermine the ALJ's failure to properly consider the neuropsychology report. In *Carisma A.*, although the teacher's scores for the minor claimant produced scores that warranted "caution" when interpreting the BASC-3 scale scores[,]" *Carisma A.*, 516 F. Supp. 3d at 305, that Court nevertheless found that categories detailed above with clinically significant or "high-risk" levels related to that minor claimant's behavior were relevant to two domains. *Id*. at 307. The failure of the ALJ in *Carisma A.* to explain why he found that behavioral evidence unpersuasive— particularly where the ALJ found less than marked abilities in the related domains and cited to portions of the report that reflected positively on the minor claimant's functioning—served as the basis for remand. *Id*. at 305–07.

Similarly, in the present case, some of Plaintiff's BASC-3 scores described above[8] also yielded cautionary ratings. R. 670–71. However, the clinically significant scores of externalizing problems; aggression; conduct problems; anger control; emotional self-control; executive functioning; negative emotionality; and inappropriate behavior/feelings, R. 672–76, nevertheless provide information on social/emotional functioning and behavior. *Carisma A.*, 516 F. Supp. 3d at 307. As in *Carisma A.* where the ALJ did not specifically acknowledge or consider the

---

[8] As detailed above, the following topics/responses contributed to the extreme caution ratings: threatens to hurt others ("Almost always"); deceives others ("Almost always"); hurts others on purpose ("Almost always"); reacts negatively ("Almost always"); puts others down ("Almost always"); bullies others ("Almost always"); does strange things ("Almost always"); and acts out of control ("Almost always"). R. 671.

behavioral issues, *id.*, the ALJ in the present case did not describe or specify the behavioral BASC-3 scores in the neuropsychological report; he simply said that such report did not "specifically address functioning." R. 29. Rejecting the behavioral evidence in the BASC-3 based on this record would require this Court to make factual findings that should be made by the ALJ in the first instance. *See Zied v. Astrue*, 347 F. App'x 862, 865–66 (3d Cir. 2009) ("When an ALJ does not address all of the evidence of record, the appropriate action is to remand for further proceedings, as a District Court has no fact-finding role in reviewing social security disability cases.") (citing *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984)); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder[.]'") (citations omitted).

Moreover, similar to *Carisma A.*, 516 F. Supp. 3d at 306 (referring to the ALJ's reliance on the minor claimant's "average WISC-V scores"), the ALJ in the present case specifically relied on the intellectual test results from the neuropsychological report to support a functional equivalence finding that Claimant had a less than marked limitation in two domains. R. 25–26 (citing, *inter alia*, Exhibit 12F, the neuropsychological report, and referring to "intellectual test results [that] were low and documented some limitations but none appear marked or extreme" in the functional equivalence analysis when discussing the domains of acquiring and using information and attending and completing tasks). The *Carisma A.* Court found that such selective citation to the psychological evaluation amounted to a "mischaracteriz[ation]" of the minor claimant's functioning. *Carisma A.*, 516 F. Supp. 3d at 307.

Accordingly, the ALJ's conclusion in this case that Claimant suffered only a moderate—rather than a marked or extreme—limitation in her ability to adapt or manage herself is not supported by substantial evidence.

The Commissioner nevertheless argues that substantial evidence supports the ALJ's finding that Claimant did not meet, medically equal, or functionally equal a listing. *D.'s Br.* at 14–15 (citations omitted). The Commissioner therefore argues this Court should affirm the ALJ's denial of benefits even where Plaintiff cites to evidence that supports a contrary conclusion. *Id*. at 15 (citations omitted).

This Court disagrees that affirmance is warranted. This is not a case where Plaintiff simply pointed to other evidence, *i.e.*, the neuropsychological report, that supports the opposite conclusion, and asks the Court to re-weigh the evidence. Rather, as this Court has already explained, the ALJ relied on the wrong reason for failing to explain at step three why the neuropsychological report did not support a finding that Claimant met or medically equaled Listing 112.08.

## B.      Interaction With Others

The functional area of interacting with others under paragraph B "refers to the abilities to relate to others age-appropriately at home, at school, and in the community." 20 C.F.R. § pt. 404, subpt. P, app.1, § 112.00E2. Examples of these abilities include the following: engaging in interactive play; cooperating with others; asking for help when needed; initiating and maintaining friendships; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and

keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or

suspiciousness. *Id*. Documentation of all of these examples is not required. *Id*.

In the present case, the ALJ specifically found that Claimant has a "marked limitation" in

Claimant's ability to interact with others under paragraph B of Listing 112.08, explaining as

follows:

> At the psychological consultative examination, the doctor observed claimant was physically restless, but she had not taken her medication on the day of her appointment. The doctor diagnosed attention deficit hyperactivity disorder and oppositional defiant disorder (Exhibit 10F). Therefore, the undersigned concludes claimant has no more than a moderate [sic][9] limitation in this domain [sic].

R. 22.

As previously noted, in order to meet or medically equal Listing 112.08, a claimant must

be markedly limited in two, or extremely limited in one, of the four broad functional areas under

paragraph B of Listing 112.08. 20 C.F.R. pt. 404, subpt. P, app.1, § 112.08.[10] This Court has

already explained that substantial evidence does not support the ALJ's finding that Claimant is

only moderately—instead of markedly or extremely—limited in her ability to adapt or manage

---

[9] Reading the step three analysis as a whole, the ALJ's reference to a "moderate" limitation in interacting with others is a typographical error. At the outset of his discussion of whether Claimant's mental impairments meet or medically equal a listed impairment, the ALJ summarizes his findings related to Claimant's limitations under paragraph B, including, *inter alia*, that Claimant has "a marked limitation in interacting with others." R. 21. Similarly, in the opening sentence discussing this functional area, the ALJ states that, "[i]n the area of interacting with others, the claimant has [a] marked limitation." R. 22. Notably, the parties do not dispute that the ALJ found that Claimant is markedly limited in this functional area.

[10] As this Court also noted earlier, paragraph A of Listing 112.08 requires medical documentation of a pervasive pattern of one or more of certain behaviors. *Id*. at § 112.08(A) (listing, *inter alia*, disregard for and violation of the rights of others; instability of interpersonal relationships; excessive emotionality and attention seeking; and recurrent, impulsive, aggressive behavioral outbursts). Without conclusively deciding, the Court notes that the neuropsychological report, along with the ALJ's own recitation of the need for IIC due to, *inter alia*, Claimant's aggression with her siblings and stealing from classmates, apparently support a finding that paragraph A is satisfied. Notably, the Commissioner does not appear to argue that paragraph A has not been met. *See generally D.'s Br.*

herself. With the ALJ's finding that Claimant has a marked limitation in the area of interacting with others, the Court need not address at length Plaintiff's challenges to this finding, *i.e.*, her argument that Claimant has an extreme limitation in this area.

However, the Court highlights that the ALJ's defective consideration of the neuropsychological report also infects his analysis of paragraph B area of interacting with others. Notably, that report found, *inter alia*, that Claimant had scale scores from the BASC-3, PRS-C that were in the "Clinically Significant[,]" which "suggest a high level of maladjustment." R. 672. Specifically, Claimant had "Clinically Significant" scores in the areas of, among others, unsatisfactory interpersonal relationships and inappropriate behavior/feelings. R. 676. Had the ALJ properly considered the neuropsychological report when assessing Claimant's ability to interact with others, he may have found that Claimant was extremely limited in this functional area.

In short, for all these reasons, the Court cannot conclude that substantial evidence supports the ALJ's findings that Claimant suffered only a moderate limitation in her ability to adapt and manage herself and only a marked limitation in the area of interacting with others. The Court therefore concludes that the matter must be remanded for further consideration of the record evidence and further consideration of whether Claimant's impairments or combination of impairments meets or medically equals a Listing for purposes of child's benefits.[11]

VI.    **CONCLUSION**

---

[11] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the record evidence and whether Claimant meets or medically equals a Listing, the Court does not consider those arguments.

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  July 15, 2026                              _____*s/Cheryl L. Pollak*_____
CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE